Filed 12/22/23  P. v. Sida CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B323689 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA393693) |
| v. | |
| DEREK SIDA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2012, a jury convicted appellant Derek Sida of three counts of premeditated attempted murder (§§ 664, 187, subd. (a).) In 2022, appellant filed a petition for resentencing under Penal Code section 1172.6 (former section 1170.95).[1] The trial court summarily denied the petition, finding appellant failed to establish a prima facie right to relief.

On appeal, appellant contends the trial court erred by summarily denying his petition without first appointing counsel. The People concede the error, but argue the failure to appoint counsel in this case was harmless because the record of conviction establishes appellant was ineligible for section 1172.6 relief as a matter of law. We agree with the People, and accordingly affirm the trial court's order.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.     Factual Background**

The following summary is taken from our opinion resolving Sida's direct appeal to provide background and context. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 222, fn. 2.)

On February 3, 2012, around 6:15 p.m., someone fired 10 bullets into a car driven by John Riccio, an 18th Street gang member, just after he parked at a residential hotel. Also in the car were Jack Eloyan and a third passenger. Riccio was struck in the shoulder. He screamed, stumbled from the car, and fell. Eloyan and the other passenger, who were not hit, helped Riccio to a room in the hotel.

---

[1]     Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10). We hereafter cite to section 1172.6 for ease of reference. Undesignated statutory references are to the Penal Code.

Los Angeles police officers responded to the scene and canvassed the area. An officer entered a nearby barbershop and saw appellant's girlfriend, who the officer knew to be a member of the La Mirada Locos, a rival of the 18th Street gang. Appellant, also a La Mirada Locos member, was in the rear of the shop, wearing a barber's smock and vigorously washing his hands and face in the sink.

At the Rampart station, appellant provided a written statement reflecting that before the shooting, he was at the barbershop with two other La Mirada Locos, G.O. and Monster, when G.O. announced he was going to "blast these fools." Appellant became nervous and walked into the barbershop parking lot, where he heard several gunshots. G.O. then ran up to him and gave him the gun. Appellant began running in the parking lot when Monster told him to give him the gun. Appellant did so, and Monster got into his car with the gun and drove away.

Appellant said he changed clothes and then washed his hands and face because he held the gun and wanted to wash off any gunshot residue. Appellant said he did not know the true names of G.O. and Monster, and when shown a photograph of a La Mirada Locos member whose moniker was Monster, said it was a different Monster. After being told that he was going to be arrested, appellant changed the names of the others involved to Lil Kro (as the one who said he was going to "blast these fools") and Silent (as the one who took the gun from him).

A few days after the shooting, a detective viewed a surveillance video from a nearby liquor store showing a male in a black-hooded sweatshirt step to the curb, raise his arm, and then walk away. The person could not be identified from the video.

The police went to the barbershop where they found a black-hooded sweatshirt hanging on a coat rack next to the sink where defendant had washed his face. (*People v. Sida* (June 24, 2014, B248886 [nonpub. opn.].)

## B. Procedural Background

In April 2013, a jury convicted appellant of three counts of premeditated attempted murder (§§ 664, 187, subd. a)), finding true the special allegation that the attempted murders were willful, deliberate, and premeditated. The jury further found the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)) and that a principal personally and intentionally discharged a firearm during the offenses. The jury, however, found not true allegations that appellant personally used or discharged a firearm. The trial court sentenced appellant to a prison term of 75 years to life.

A panel of this court affirmed the convictions in *People v. Sida* (June 24, 2014, B248886) [nonpub. opn.], with several sentencing modifications.[2] In the opinion, this court observed, "From the jury's finding that [appellant] did not personally discharge a firearm, it appears that the jury convicted him as an aider and abettor."

In August 2022, appellant filed a resentencing petition under former section 1170.95, now section 1172.6. The petition requested appointment of counsel. The trial court, without appointing counsel or ordering a response from the People, summarily denied the petition. After reviewing the file,

---

[2]    On direct appeal, appellant raised several assertions of sentencing error and sought review of a pre-trial discovery motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

4

including the jury instructions, the court concluded, "No natural and probable consequences instruction was given," and appellant was "ineligible for resentencing because he was convicted of attempted murder as a direct aider and abettor."

Appellant timely appealed.

## DISCUSSION

### A.     Section 1172.6 Procedures and Standard of Review

Through Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 1), the Legislature clarified the felony-murder rule and eliminated the natural and probable consequences doctrine to ensure that any murder conviction and attached sentence is commensurate with individual culpability.  (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843; accord, § 189, subd. (e); § 188, subd. (a)(3) ["[m]alice shall not be imputed to a person based solely on his or her participation in a crime"].)  The Legislature also added former section 1170.95 (now section 1172.6), pursuant to which individuals convicted of felony murder, murder under the natural and probable consequences doctrine, or any theory under which malice is imputed to a person solely based on his participation in a crime, may petition for vacatur of their convictions and resentencing.  (§ 1172.6, subd. (a).)

In 2021, the Senate amended section 1172.6 to make clear that defendants convicted of attempted murder under the natural and probable consequences doctrine or manslaughter are also entitled to seek resentencing relief.  (Sen. Bill No. 775 (2021–2022 Reg. Sess.); Stats. 2021, ch. 551, §§ 1–2, eff. Jan. 1, 2022.)

If a petitioner makes a prima facie showing for relief, the trial court is required to issue an order to show cause for an

5

evidentiary hearing.  (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 891; § 1172.6, subds. (c), (d).)  If the petition and record in the case establish conclusively that the petitioner is ineligible for relief as a matter of law, the trial court may deny the petition.  (*People v. Strong* (2022) 13 Cal.5th 698, 708; *Lewis*, *supra*, 11 Cal.5th at pp. 970–972; § 1172.6, subd. (c).)

We review de novo whether the trial court properly denied appellant's section 1172.6 petition without issuing an order to show cause.  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

**B.  Section 1172.6 Relief for Attempted Murder Convictions**

Subdivision (a) of section 1172.6 now provides that a person convicted of "attempted murder under the natural and probable consequences doctrine" may file a petition with the court to have the conviction vacated and to be resentenced on any remaining counts when certain conditions apply.  One required condition is "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine."

In his opening brief, appellant argues that notwithstanding the language of the statute, a defendant convicted of attempted murder qualifies for relief if he or she was convicted under any theory in which malice was imputed to him or her based solely on his or her participation in a crime.  We need not address this purported distinction as it would make no difference in the

6

outcome.[3]  That is, the record of conviction establishes appellant was not convicted on a theory that imputed malice to him "solely" based on his participation in "a crime."

## C.  The Superior Court Erred by Summarily Denying Appellant's Petition Without Appointing Counsel

In *Lewis*, our Supreme Court held that once a petitioner files a facially sufficient petition under section 1172.6 and requests appointment of counsel, the superior court must appoint counsel before conducting any prima facie review.  (11 Cal.5th at p. 963 ["petitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition"]; accord, § 1172.6, subd. (b)(3).)  Appellant contends, and the People concede, the trial court erred in summarily denying his petition without first appointing him counsel and affording his attorney an opportunity to file a brief because appellant filed a facially sufficient petition.  We agree with the parties on this point.  (§ 1172.6, subd. (b)(3); *Lewis, supra*, 11 Cal.5th at p. 963.)

However, the erroneous failure to appoint counsel for a section 1172.6 petitioner is subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818, 836.  (*Lewis, supra*, 11 Cal.5th at pp. 957–958 [failure to appoint counsel under § 1172.6, subd. (b)(3) is "state law error only, tested for prejudice under [*Watson*]"]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 676.)  Thus, the error requires reversal in this case only if

---

[3]     We accordingly deny as unnecessary appellant's request for judicial notice of legislative materials "pertaining to the scope of Senate Bill 775."  (Cf. *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 251, fn.4; *Tom v. City and County of San Francisco* (2004) 120 Cal.App.4th 674, 688, fn. 2.)

appellant can show a reasonable probability that his petition would not have been summarily denied if he had been afforded the assistance of counsel. (*Lewis,* at pp. 972–974; *Daniel*, at p. 676.) Appellant fails to meet this standard if the record of his conviction, which includes the jury instructions, establishes that he is not entitled to relief as a matter of law. (*Daniel,* at p. 678.) As explained below, the record establishes appellant is not entitled to relief in this case.

## D.    The Error was Harmless

"Direct aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548; see also *People v. Gentile*, *supra,* 10 Cal.5th at p. 848.)

Here, the record of conviction demonstrates appellant was convicted of attempted murder as either a direct perpetrator or an aider and direct abettor to that crime.

Specifically, the trial court instructed the jury on the elements of attempted murder (CALCRIM No. 600), which stated that to find appellant guilty of the attempted murders charged in the information,[4] the People must prove "[t]he defendant *intended to kill that person.*" The jury also received instruction on the general principles of aiding and abetting (CALCRIM No. 400), which informed the jury that someone may be guilty of a crime by either personally committing the crime or aiding and abetting the perpetrator of the crime (CALCRIM No. 400 [Aiding

[4]     The amended information, filed on September 2012, charged appellant with three counts of attempted premeditated murder of victims John Riccio, David Eloyan, and John Doe (§§ 664, 187, subd (a)). Appellant was not charged with any other crimes.

8

and Abetting: General Principles]). As to the theory of aiding and abetting, specifically, the jury was instructed with CALCRIM No. 401 which provided in relevant part: "To prove that a defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (CALCRIM No. 401 [Aiding and Abetting: Intended Crimes].)

By convicting appellant on the attempted murder charges, the jury necessarily found he shared his codefendants' criminal purpose, and with the intent of attempting to kill the victims, in fact aided the commission of the attempted murders. (See *People v. Lee* (2023) 95 Cal.App.5th 1164, 1191–1192 [even assuming appellant was convicted of attempted murder as an aider and abettor, the instructions necessarily required the jury to find he intended to aid and abet an unlawful killing—"the very definition of express malice"]; *People v. Coley*, *supra*, 77 Cal.App.5th at pp. 547–548 ["by finding appellant guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill or express malice when he aided and abetted the [underlying] murder"]; *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054

9

[observing the person guilty of attempted murder as an aider and abettor must have intended to kill].)

In arguing otherwise, appellant notes the CALCRIM No. 400 instruction given in his case also included a bracketed paragraph that is to be provided when the prosecutor is relying on the natural and probable consequences theory, which reads: "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." However, we disagree the inclusion of this bracketed language was tantamount to the jury being instructed on the theory of natural and probable consequences—or otherwise resulted in the jury imputing liability based on an improper theory.

Neither the court's instructions nor the prosecution's closing argument indicate the jury was given the option of, or actually relied upon, the natural and probable consequences theory of liability or any theory under which liability was imputed to appellant based solely on his participation in "one crime" that resulted in "other crimes." Appellant was not charged with any other crimes and the jury was not instructed on any other "target" or "non-target" crimes. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 947; cf. *People v. Lopez* (2022) 78 Cal.App.5th 1, 20 [observing "[t]he jury would not have been aware of CALCRIM instructions other than those given and would not have known of any bench notes"].) Instead, and as previously discussed, the jury was told to find appellant liable as an aider and abettor, he must have "intended to aid and abet the perpetrator in committing the crime" "[b]efore or during the commission of the crime" and "the crime" at issue on this case—

10

i.e., attempted murder—requires that "[t]he defendant intended to kill that person."

Appellant complains the prosecutor merely "generally" (and, purportedly "incorrectly") told the jury that an aider and abettor is someone who "knows of the crime [and] aids and abets the perpetrator's unlawful purpose" without informing the jury that appellant must "both know about, and share, the perpetrator's murderous specific intent." Although the prosecutor's argument may have tracked only a portion of the aiding and abetting instructions, he did not convey to the jury that appellant could be convicted on a natural and probable consequences theory. He did not ask the jury to impute liability based on appellant's participation in a crime or offense other than attempted murder. (*Estrada, supra,* 7 Cal.App.5th at p. 949 [so noting]; see also *People v. Cortes* (2022) 75 Cal.App.5th 198, 205 ["[Appellant] overlooks the fact that the prosecution did not argue at any point during trial, including closing argument, that a crime other than murder or attempted murder was committed, and no other crime was charged or at issue throughout the trial"].)

In sum, the inclusion here of the reference to "other crimes" in CALCRIM No. 400 cannot be read to invoke the natural and probable consequences theory or any now-invalid theory of liability in light of the record of conviction in this case. The superior court's error in failing to appoint counsel and accept briefing before making its prima facie determination is therefore harmless. (See *Lewis, supra,* 11 Cal.5th at pp. 957–958; *People v.*

11

*Cortes, supra,* 75 Cal.App.5th at pp. 205–206; *Daniel, supra,* 57 Cal.App.5th at p. 677.)[5]

## E. Appellant's Contentions of Trial Error or Attacks on the Sufficiency of Evidence Are Not Cognizable in this Section 1172.6 Appeal

In his opening brief, appellant also raises additional arguments which are beyond the scope of this appeal.

First, appellant asserts the prosecutor's argument generally suggested an aider and abettor and principal are equally guilty and points out the "equally guilty" language in aiding and abetting instructions has been recognized as "misleading" under some circumstances. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433 [discussing previous cases and instructions on issue].) To the extent appellant is suggesting a separate claim of trial error, he could have asserted this issue in his direct appeal and cannot now do so as a basis for section 1172.6 relief. (Cf. *People v. Burns* (2023) 95 Cal.App.5th 862, 866–867 [affirming summary denial of section 1172.6 petition and observing appellant could have raised his challenge to "equally guilty" language in instructions on direct appeal and section 1172.6 "does not create a right to a second appeal"].)

---

[5] To the extent appellant cites *People v. Langi* (2022) 73 Cal.App.5th 972 and *People v. Maldonado* (2023) 87 Cal.App.5th 1257, those cases are inapposite. *Langi* concerned a conviction for second degree implied malice murder and *Maldonado* involved lying in wait which does not require an intent to kill. (See *People v. Lee, supra,* 95 Cal.App.5th at p. 1191 [noting concerns in *Langi* and *Maldonado* not present under instructions given in attempted murder prosecution].)

In a similar vein, appellant argues his criminal conduct "came after the fact" "from his own post-hoc handling of the gun" and there is "no solid, credible, and incontrovertible evidence" that he "knew of or shared" the perpetrator's intent. However, "[t]he mere filing of a [prior Penal Code] section 1170.95 petition does not afford the petitioner a new opportunity to raise claims of trial error *or attack the sufficiency of the evidence supporting the jury's findings.*" (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947, emphasis added; see also *People v. Daniel, supra,* 57 Cal.App.5th at p. 678.)

Our sole inquiry is whether appellant was convicted under a now-invalid theory of liability. (*Burns*, *supra,* 95 Cal.App.5th at p. 868–869.) For the reasons indicated above, we have concluded this was not the case, and we accordingly affirm the trial court's order denying resentencing relief.

## DISPOSITION

The order denying appellant's postconviction petition for resentencing under section 1172.6 is affirmed.


MORI, J.

We concur:


COLLINS, Acting P.J.


ZUKIN, J.

13